NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 07-11757 |
| | : | |
| SOLOMON DWEK, et al., | : | Chapter 11 |
| | : | |
| Debtor | : | |
| | : | |
| CHARLES A. STANZIALE, JR., as Liquidating Trustee of Solomon Dwek and Monmouth Road Brokers, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Adversary no. 08-2205 |
| | : | |
| JOSEPH KOHEN AND ABC CORPS 1-10, | : | |
| | : | |
| Defendant(s). | : | **MEMORANDUM OPINION** |
| | : | Trial Date: November 1, 2010 |

**APPEARANCES**

Attorneys for Plaintiff
Penelope M. Taylor, Esquire
Brian L. Baker, Esquire
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Attorney for Defendant
Barry W. Frost, Esquire
Teich Groh
691 State Highway 33
Trenton, New Jersey 08619

Procedural History

On September 10, 2008, Charles A. Stanziale Jr., as Chapter 11 Trustee to the Solomon Dwek Estate, filed an adversary complaint against Joseph Kohen in the United States Bankruptcy Court for the District of New Jersey #08-02205. In the instant complaint, the Trustee seeks: (1) an accounting of all funds benefits and services directly or indirectly by or for the benefit of Kohen, including those paid to other entities that Kohen controls or in which Kohen has an interest; (2) turnover of rent payments received from the Tenants at the building owned by Monmouth Road Brokers, LLC; and (3) payment of rent for occupancy of the premises owned by Monmouth Road Brokers, LLC.

The Bankruptcy Court tried this matter on November 1, 2010. The parties filed their post-trial submissions on November 22, 2010 and December 13, 2010. The Bankruptcy Court enters the following opinion in accordance with 28 U.S.C. § 157(b).

Factual Background

Solomon Dwek ("Dwek") formed Monmouth Road Brokers, LLC ("MRB") as a New Jersey Company on April 14, 2003. As the sole member, Dwek executed an Operating Agreement for MRB on July 11, 2003. MRB purchased real property located at 45 Monmouth Road, Ocean Township, Monmouth County, NJ and recorded the deed with Monmouth County. Amboy National Bank held a mortgage against the property.

The defendant, Joseph Kohen ("Kohen") and Dwek engaged in numerous business transactions from 2004 through 2006. Many of these transactions were fraudulent. Most of these fraudulent transactions involved a trust account held by Kohen in the name of Jerome Shapiro (the "Shapiro Account"), which was used to transfer money between Dwek and Kohen.

Dwek testified at trial that "[m]e and Kohen, at the time, were committing tens of millions of dollars in real estate mortgage fraud," confirming that Kohen transferred millions of dollars to Dwek during their relationship.

At some point, Dwek and Kohen agreed to transfer sole ownership of MRB to Kohen. Although the agreement to transfer ownership was not reduced to writing, on November 7, 2005 Dwek sent to his accountant, Art Addeo, a letter stating:

> In regard to the above matter , please be advised that on October 27, 2005 I sold this entity known as Monmouth Road Brokers, LLC to Joey Kohen who owns this property.  The total sales price if [sic] $525,000., and Joey paid off my first and only mortgage with Amboy National Bank in the amount of $291,228.53, and owes me the total sum of $233,771.47 that is due and payable on December 15, 2005.
> By copy of this letter to Eric at Capital Property Management I am advising him of the sale and to make sure the utilities are cut off and all future tax and other bills are forwarded to Joey Kohen, and also the insurance should be cut off as of that date.

This letter indicates, unconditionally, that Dwek "sold" MRB to Kohen on October 27, 2005. Dwek concedes that he does not remember filing any Tax Return for MRB after November 7, 2005.  Transcript of Trial at 83, Stanziale v. Kohen,  No. 08-02205 (Bankr. D.N.J. Nov. 1, 2010). Dwek also testified that  Kohen collected rent from the tenants in the building owned by MRB. Id. at 52-53.  Following execution of the above letter,  Dwek also ceased insuring MRB's sole asset, 45 Monmouth Road, Ocean, NJ.  Id. at 62.  Nonetheless, Dwek asserts the transfer of ownership never occurred because Kohen never paid the $233,771 balance.  Kohen claims the balance was paid from the Shapiro Account.

Discussion

The dispositive issue in the instant case is whether the estate of Solomon Dwek owns the membership interest in MRB.  Determining ownership of MRB requires interpretation of The

New Jersey Limited Liability Company Act (the "Act").  Based on the Act, Kohen is the legal owner and sole member of MRB.  Accordingly, the Estate of Solomon Dwek has no interest in MRB.

"Where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms."  United States v. Ron Pair Enters., 489 U.S. 235, 241 (U.S. 1989) (citing Caminetti v. United States, 242 U.S. 470, 485 (1917)).  The Act allows LLC member/owners  to draft operating agreements freely that must be enforced.  Generally, "[t]he Act is to be liberally construed to give the maximum effect to the principal of freedom of contract and to the enforceability of operating agreements."  R & R Marketing, L.L.C. v. Brown-Forman Corp.,  307 N.J.Super. 474, 483 (1998) (citing N.J.S.A. 42:2B-66; Peter D. Hutcheon, The New Jersey Limited Liability Company Statute: Background and Concepts, 18 Seton Hall Legis. J. 111, 129 (1993) (citation omitted)).  Specifically, the Act allows limited liability companies to carry on any lawful business, purpose, or activity.  See N.J.S.A. 42:2B-8(a).  Thus, "[a] limited liability company shall possess and may exercise all the powers and privileges granted by this act or by any other law or by its operating agreement, together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the business, purposes or activities of the limited liability company."  N.J.S.A. 42:2B-8(b).

MRB has an Operating Agreement in place, which was signed by on July 11, 2003 by Dwek when he was the sole member of MRB.  Transcript of Trial at 26, Stanziale v. Kohen,  No. 08-02205 (Bankr. D.N.J. Nov. 1, 2010).  Under the Act, this Operating Agreement is valid and

enforceable. An "Operating Agreement" is defined by the Act as "a written agreement among the members, or in the case of a limited liability company with only one member, the declaration by that one member of the terms of the operating agreement which shall be deemed an agreement between the member and the limited liability company, as to the affairs of a limited liability company and the conduct of its business." N.J.S.A. 42:2B-2. Notably, it is only "[i]n the absence of an operating agreement [that] the statutory provisions control." Union Cnty. Imp. Auth. v. Artaki, LLC, 392 N.J. Super. 141, 152 (App.Div. 2007); see also Kuhn v. Tumminelli, 366 N.J. Super. 431, 438 (App.Div. 2004)(finding that without an operating agreement, "the powers, duties, and responsibilities of the members of the LLC defaulted to the Statute").

The MRB Operating Agreement articulates in Article VII how company ownership interests shall be transferred. Article VII of the MRB Operating Agreement does not articulate a specific procedure that must be followed in order for the member to sell their interest. The MRB Operating Agreement states, "[t]he member may, directly or indirectly, sell, assign, transfer, pledge, hypothecate or otherwise dispose of all or any part of the Member's Interest." Thus, the MRB Operating Agreement does not require: (1) a signed agreement of sale; (2) an amended operating agreement; (3) an amended certificate of formation; (4) a HUD statement; (5) a closing statement; or (6) an annual report filed identifying the member of the LLC. Therefore, the lack of these documents is not dispositive of ownership of MRB. Rather, the MRB Operating Agreement grants the sole member broad discretion to change ownership by any reasonable means, including an oral agreement of sale combined with the November 7, 2005 signed letter. Finally, Dwek's testimony makes clear that following the execution of the November 7, 2005

letter, he took actions consistent with having sold his ownership interest in MRB and the property. Transcript of Trial at 106, Stanziale v. Kohen, No. 08-02205 (Bankr. D.N.J. Nov. 1, 2010).

Deference to the operating agreement reverberates throughout the Act. For example, N.J.S.A. 42:2B-46 provides:

> a. An assignee of a limited liability company interest may become a member as provided in an operating agreement and upon:
>
> > (1) The approval of all of the members of the limited liability company other than the member assigning his limited liability company interest; or
>
> > (2) Compliance with any procedure provided for in the operating agreement.

Similarly, the Act defers to the operating agreement or allows written consent of all members with regard to a member transferring their interest. See N.J.S.A. 42:2B-24 ("A member shall be dissociated from a limited liability company upon the occurrence of any of the following events: (a) Unless otherwise provided in an operating agreement, or with the written consent of all members…(2) an event agreed to in the operating agreement as causing the member's dissociation."). As it happens, Dwek disassociated himself from MRB by executing the November 7 letter to his accountant, which serves as documentation that he sold his membership interest in MRB. This disassociation is a second, independent basis for finding that the transfer was validly effectuated.

The Trustee's argument hinges on a finding that Dwek never transferred ownership of MRB to Kohen. In support of his position, the Trustee asserts that N.J.S.A. 42:B-21(b)(1) requires the records of a limited liability company to reflect the change in member ownership.

This provision states:

> b. After the formation of a limited liability company, a person acquiring a limited liability company interest is admitted as a member of the limited liability company:
>
> > (1) In the case of a person acquiring a limited liability company interest directly from the limited liability company, at the time provided in and upon compliance with the operating agreement or, if the operating agreement does not so provide, upon the consent of all members and when the person's admission is reflected in the records of the limited liability company

N.J.S.A. 42:B-21(b)(1).

The Act only requires a new member's admission to be reflected in the records of the company if ownership is not transferred "at the time provided in and upon compliance with the operating agreement." (emphasis added). Thus, the statute's requirements simply do not pertain where the operating agreement addresses transfer of interest. Article VII of MRB's Operating Agreement provides what a member must do to comply with MRB's procedure for transferring their interest in the company, and the transfer was effectuated pursuant to the Operating Agreement's terms. Therefore, MRB's Operating Agreement governs the membership transfer and the default provisions of N.J.S.A. 42:B-21(b)(1) do not apply.

The Trustee's position depends on an interpretation of the November 7, 2005 letter as a conditional agreement of sale, conditioned upon Kohen paying Dwek $525,000. That interpretation is untenable. First, Dwek's letter clearly says "I sold this entity known as Monmouth Road Brokers, LLC to Joey Kohen who owns this property." (emphasis added). The use of the past tense to describe the sale and the present tense to describe ownership strongly indicates that the transfer had already occurred. Second, Dwek knew that Kohen had satisfied the outstanding mortgage with Amboy National Bank' Transcript of Trial at 84, Stanziale v.

Kohen, No. 08-02205 (Bankr. D.N.J. Nov. 1, 2010,) so Dwek knew the transfer was at minimum partially effectuated. Third, Dwek admitted in his testimony "[m]e and Kohen, at the time, were committing tens of millions of dollars in real estate mortgage fraud so I wasn't worried about $233,000 when this guy was helping me embezzle millions of dollars." Id. at 67. Just because Dwek later become suspicious that Kohen was appropriating funds from the Shapiro Account does not mean he can unilaterally and retroactively unravel the transaction. Dwek testified that over the course of their relationship, he received millions of dollars from Kohen. Id. at 73. Even if this court were to find that the November 7, 2005 letter from Dwek created a conditional contract between the parties, which finding the court cannot make, Kohen testified that he paid the balance with transfers from the Shapiro Account. In consideration of the undisputed fact that monies flew in and out of the Shapiro Account between Dwek and Kohen, it would be impossible for this court to hold that Kohen is not the sole member of MRB simply because Kohen failed to specifically document a particular financial transfer of $233,771.47 to Dwek.

## Conclusion

Pursuant to the MRB Operating Agreement, Kohen is the sole member of MRB. Consistent with the New Jersey Limited Liability Company Act, this court must give maximum effect to the enforceability of LLC operating agreements. As quoted, the MRB Operating Agreement grants the member authority to sell or dispose of their entire interest. Dwek's oral representations to Kohen, combined with the November 7, 2005 letter, and Dwek's intentional decision to cease caring for 45 Monmouth Road in a manner consistent with ownership prove

that Dwek sold or transferred his interest in MRB to Kohen. Therefore, the Trustee's Complaint seeking a recovery of Estate Property against Kohen must fail. Kohen is the sole member and owner of MRB. Accordingly, the Estate of Solomon Dwek has no interest in MRB.

Counsel for the Defendant shall submit a form of order dismissing the Trustee's complaint, consistent with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: January 31, 2011